UNITED STATES DISTRICT COURT

DISTRICT OF DELAWARE

JOHN W. RUSSELL, MARK RUSSELL, and JORDAN KELLEY,

Plaintiffs,

v.

GPD HOLDINGS LLC, doing business as COINFLIP,

Defendant.

Civil Action No. 26-1416

**COMPLAINT FOR PATENT INFRINGEMENT**

JURY TRIAL DEMANDED

**Nature of the action**

1. Plaintiffs John W. Russell, Mark Russell and Jordan Kelley bring this action under the patent laws of the United States for infringement of claims 1 and 8 of U.S. Patent No. 10,332,205 B1, entitled "Bitcoin kiosk/ATM device and system and method of using the same" (the "205 patent").

2. Plaintiffs allege matters concerning their ownership and conduct on personal knowledge. Allegations concerning Defendant's nonpublic software implementation, configuration and internal transaction records are made upon information and belief, based on the identified operator publications, technical documentation, historical records and resulting inferences. Plaintiffs expect those specifically identified implementation allegations to receive further evidentiary support through discovery.

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2026 OCT 25 AM 10:20

**Parties and ownership**

3. Plaintiff John W. Russell is an individual residing in Carson City, Nevada, and appearing on his own behalf. His mailing address is 1887 Whitney Mesa Drive PMB 8665, Henderson, Nevada 89014.

4. Plaintiff Mark Russell is an individual appearing on his own behalf. His mailing address is 514 Americas Way # 16606, Box Elder, South Dakota 57719.

5. Plaintiff Jordan Kelley is an individual appearing on his own behalf. His mailing address is 477 Vermont Street, San Francisco, California 94107.

6. Defendant GPD Holdings LLC is a limited liability company organized under Delaware law with its principal place of business at 433 West Van Buren Street, Suite 1050N, Chicago, Illinois 60607.

7. Plaintiffs jointly own the entire right, title and interest in the 205 patent in exact undivided one-third shares. Their executed assignment expressly includes the transferable accrued infringement claims asserted here. All three owners join in their individual capacities.

**Jurisdiction and venue**

8. This action arises under 35 U.S.C. sections 271 and 281. This Court has subject-matter jurisdiction under 28 U.S.C. sections 1331 and 1338(a).

9. This Court has personal jurisdiction over GPD Holdings LLC because it is organized under Delaware law and is at home in Delaware.

10. Venue is proper in this District under 28 U.S.C. section 1400(b) because GPD Holdings LLC resides in Delaware, the State of its organization.

**The patent and claimed combinations**

11. The 205 patent issued June 25, 2019 from application 13/942,930, filed July 16, 2013. Mark Russell and John W. Russell are its named inventors. Exhibit A is a true copy of the issued patent, containing thirteen claims. The issued claims are presumed valid under 35 U.S.C. section 282(a).

12. Claim 1 recites a bill validator, bill dispenser, user interface and a processor programmed to cause the stated responses to a user request. For a cash purchase, the device transmits Bitcoin from available local inventory associated with the device and accessible by the processor to the remote unique address supplied by the user through the interface.

13. When that local inventory lacks availability, the instructions automatically communicate with a third-party Bitcoin exchange remote from the device, determine Bitcoin availability at least equivalent to inserted cash, purchase available Bitcoin, accept the purchased Bitcoin into the same local inventory and electronically transmit it to the user-supplied address. For the Bitcoin sale response, the instructions verify Bitcoin transmitted by the user from the recited remote address into local inventory and, upon verification, cause cash dispensing.

14. Claim 8 recites a central computer and a plurality of communicating devices, each having a bill validator, bill dispenser and interface, with one or more processors programmed to cause the specified purchase and sale responses. The claimed combinations include the installed conditional capabilities; cash purchase and Bitcoin sale are separate customer transaction types.

15. The asserted apparatus and system include executable instructions implementing conditional purchase and sale responses. On information and belief, the accused software supplies those resident programmed capabilities, including capabilities selected through its ordinary

operating configuration. A purchase request and a sale request activate their respective branches of that program.

16. Plaintiffs construe the claimed local Bitcoin inventory as the Bitcoin balance associated with the requesting kiosk and accessible to its programmed processing resources for purchase fulfillment and sale receipt. The specification permits networked processing and storage, including remote execution in a client/server or cloud environment (Exhibit A, cols. 3-4 and col. 7, ll. 35-46). Under Plaintiffs' construction, a server-administered hot wallet or operator-controlled exchange-account balance qualifies when it serves that device and the purchased Bitcoin is actually credited or allocated into that same inventory before customer transmission. Plaintiffs do not contend that every exchange account necessarily satisfies the limitation. Nor does this construction dispense with the claimed sequence of acquisition, inventory acceptance and onward transmission.

**Defendant equipment and conduct**

17. Defendant operates a United States network of CoinFlip Bitcoin kiosks. Its locator advertises buying and selling at Citgo (Rogers Park), 1840 West Peterson Avenue, Chicago, Illinois, and Lakeview Market & Liquors, 1118 South Michigan Avenue, Chicago, Illinois. These identified two-way devices and their connected processing components are the representative configurations investigated for this action.

18. Defendant describes customers selecting Bitcoin, supplying a destination wallet address through the kiosk interface, scanning a wallet QR code and inserting banknotes. Its cash-withdrawal guide describes selecting a sale, sending Bitcoin to the displayed transaction address, awaiting blockchain confirmation and redeeming the transaction for dispensed cash.

19. Defendant has published a cash-withdrawal tutorial showing banknotes retrieved from the payout tray and marketing instructions for two-way ATM conversion and ticket redemption. Exhibit B reproduces the preserved captures.

20. General Bytes identifies CoinFlip as a customer of its terminal and Crypto Application Server platform. The vendor documents central configuration, connected hot wallets, exchange integrations and transaction handling for that platform.

21. General Bytes documents selectable buying strategies in a terminal's Crypto Settings. Strategy 2 sends Bitcoin from the hot wallet first and then purchases replacement coins for that wallet. Strategy 3 uses Strategy 2 but falls back on insufficient hot-wallet funds to Strategy 1, which purchases on an exchange and sends directly from the exchange to the customer. Exhibit B, Figure B-3 reproduces that baseline documentation. The device-associated inventory alleged here includes, upon information and belief, an operator-controlled balance credited with the acquired Bitcoin before outbound delivery; the existence and device association of that intermediate credit are implementation allegations, rather than an express statement in the vendor's strategy description.

22. In a January 2, 2020 submission retained by the Arkansas Securities Department, GPD Holdings described purchasing cryptocurrency from liquidity providers, moving it into CoinFlip's wallet connected to its terminals, and delivering cryptocurrency owned by CoinFlip from that wallet to customers. Exhibit C is the complete retained two-page governmental record. This describes the operator's inventory and terminal architecture before the later materials identified here.

23. General Bytes' July 1, 2026 release notes identify CoinFlip-specific terminal interface changes under issues CF-1118 through CF-1125 and a CoinFlip-related identity-data

change. Together with the manufacturer's named CoinFlip customer statement, these identify a continuing relationship involving terminal interfaces and central application software.

24. General Bytes documents wallet ownership confirmation at the terminal, cryptocurrency-address pinning to customer identities, and risk screening that uses sending addresses for Bitcoin sales. These are documented capabilities of the identified platform relevant to the sale-verification program.




Figure B-1. The operator tutorial depicts a banknote in the payout tray being retrieved, with the instruction RECEIVE CASH. Source: https://www.youtube.com/watch?v=oVUJvEcyStc; 2019-04-26. Full capture: Exhibit B, B-1.




Figure B-2. CoinFlip advertises two-way ATMs and depicts sending crypto to an ATM QR code, ticket redemption and obtaining cash. Source: https://www.instagram.com/p/C7Cy6n_I2IL/; 2024-05-16. Full capture: Exhibit B, B-2.




Figure B-3. Vendor documentation identifies configurable wallet and exchange buying strategies, including an insufficient-funds fallback. Source: https://generalbytes.atlassian.net/wiki/spaces/ESD/pages/968720388/Crypto+Settings; Revision 37 dated 2026-05-26. Full capture: Exhibit B, B-3.

25. CoinFlip's FAQ preserved in an October 19, 2021 archive describes scanning the customer wallet address and inserting banknotes for purchases, and a sale workflow using a

transaction-address voucher, network confirmation and cash dispensing. This contemporaneous operator description corroborates the purchase and sale functions of its historical two-way equipment.

26. General Bytes' published patch history includes CoinFlip-specific wallet-address input and event logging under CF-656 and CF-657 in version 20240701.19, a CoinFlip manual-wallet-entry screen change under CF-913 in version 20250301.42, and a sale-registration QR screen under CF-796 in version 20250301.24. The same history describes transaction processing, exchange-strategy handling and wallet-supply controls. These are published descriptions of the customized terminal/server software supporting the interface and processing architecture alleged here.

27. The representative apparatuses are the United States two-way devices identified above, operated with the associated wallet and processing resources. On information and belief, Defendant puts those devices and connected processing resources into service, controls their commercial operation, and receives the benefit of its cryptocurrency purchases and sales. The operator-specific public records identified above support this representative hardware and control allegation.

28. Upon information and belief, based on CoinFlip's documented exchange/conversion integration and standard kiosk liquidity management architecture as implemented by its identified platform, the accused two-way kiosks and connected application server implement an automated purchase response when Bitcoin available in the requesting kiosk's local inventory is insufficient to fulfill the customer's pending cash purchase. The program communicates with a remote third-party exchange, checks availability of the amount corresponding to the validated cash and, when available, purchases that amount, accepts it

into CoinFlip's device-associated inventory, and transmits it to the customer-supplied address. The acceptance includes the inventory credit or allocation by which CoinFlip acquires the purchased Bitcoin for that kiosk's fulfillment before it is sent to the customer.

29. The conditional-acquisition inference rests on CoinFlip's identified General Bytes platform and customized CF software branch, the platform's documented insufficient-funds fallback, and CoinFlip's government submission describing company-owned Bitcoin delivered from its terminal-connected wallet. Upon information and belief, the accused configuration credits exchange-acquired Bitcoin to CoinFlip-controlled inventory associated with the requesting device before sending it to the customer, either through a processor-accessible operator exchange balance or an intermediate connected-wallet credit. The specific credit and routing are inferred implementations. Strategy 2's ordinary purchase-after-delivery replacement cycle is not itself alleged to perform the pending request's shortage-acquisition sequence. The platform documentation, operator inventory disclosures and custom wallet-supply controls together supply the basis for the alleged conditional program; the exact selected strategy and account mappings reside in Defendant's nonpublic records.

30. Upon information and belief, in the accused Bitcoin-for-cash sale workflow the customer supplies a customer-controlled source Bitcoin address through the kiosk user interface and connected registration interaction. The program associates that supplied address with the requested sale, verifies the customer's transfer from that address into the same device-associated inventory, and authorizes cash dispensing after verification. The inference rests on CoinFlip's customer-owned-wallet requirement and confirmation-before-cash workflow, together with the identified General Bytes platform's wallet-ownership confirmation, address pinning and sending-address screening. The CF-656/CF-657 wallet-input and logging

changes, CF-796 sale-registration QR screen, and CF-913 manual-wallet-entry screen corroborate interface customization. Those screen descriptions do not by themselves establish which address is captured during a sale; source-address input and verification in the accused configuration are expressly alleged on information and belief.

**Count I Direct infringement of claim 1**

31. Plaintiffs incorporate paragraphs 1 through 30 into this count.

32. The accused claim-1 apparatuses are the representative United States two-way kiosks identified above, including their programmed processors and associated inventory. Defendant uses those apparatuses as principal in customer Bitcoin purchases and sales and controls their processing, inventory and cash handling. By this domestic use of the complete apparatus, Defendant directly infringes claim 1 under 35 U.S.C. section 271(a).

33. Upon information and belief, each accused apparatus validates the deposited banknotes and responds to the customer's Bitcoin purchase request by delivering from available local inventory or, when that inventory cannot fulfill the request, automatically acquiring the corresponding Bitcoin from a remote third-party exchange, accepting it into the same device-associated inventory and then transmitting it to the address the customer supplies through the interface. The factual bases for this implementation inference are set out above.

34. Upon information and belief, each accused apparatus also implements the wallet-identified sale and verification program described above, verifying the customer's Bitcoin transfer from the supplied remote address into its local inventory and dispensing banknotes in exchange after verification.

35. Defendant's unauthorized domestic use of the claimed apparatus has injured Plaintiffs. Plaintiffs seek compensatory damages under 35 U.S.C. section 284, including for legally recoverable accrued infringement claims held by Plaintiffs.

**Count II Direct infringement of claim 8**

36. Plaintiffs incorporate paragraphs 1 through 30 into this count.

37. The accused claim-8 system includes Defendant's central Crypto Application Server and the communicating United States two-way kiosks identified above. Each such kiosk has a banknote validator, banknote dispenser and user interface. Upon information and belief, their processors execute the purchase, conditional exchange-acquisition and sale-verification responses alleged above through the connected server, inventory and transaction services. By putting this complete system into service and controlling and benefiting from its operation, Defendant directly infringes claim 8 under 35 U.S.C. section 271(a).

38. On information and belief, Defendant puts the communicating system into service, controls its operation and receives its commercial benefit by conducting the described cryptocurrency purchases and sales through its devices and inventory. The public operator and platform materials identified above provide the factual basis.

39. Defendant's infringement of claim 8 has injured Plaintiffs. The compensatory relief sought under this count concerns the same legally recoverable conduct as Count I. Plaintiffs request no duplicate recovery for the same injury.

**Damages and relief**

40. Plaintiffs request compensatory damages under 35 U.S.C. section 284 for proven infringement within the applicable patent term, rights held by Plaintiffs and periods

permitted by 35 U.S.C. sections 286 and 287, including legally recoverable prefiling conduct. The amount is to be determined from covered activity and a supported reasonable royalty.

41. Plaintiffs request prejudgment and postjudgment interest and taxable costs as legally available, an accounting and supplemental damages for covered conduct after the trial damages cutoff, and an ongoing reasonable royalty if continuing infringement and the basis for that relief are established.

**Prayer for relief**

A judgment that Defendant has directly infringed claims 1 and 8 of the 205 patent;

Compensatory damages for all legally recoverable past and continuing infringement, without duplicate recovery;

An accounting, supplemental damages and, if supported by continuing infringement, an ongoing reasonable royalty;

Legally available prejudgment and postjudgment interest and taxable costs; and

Such other relief as the Court finds just and proper.

**Jury demand**

Under Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable.

Respectfully submitted,

Signature: John W Russell Date: 2026-10-28

John W. Russell, Plaintiff pro se

1887 Whitney Mesa Drive PMB 8665

Henderson, NV 89014

Telephone: 702-957-1461

Email: johnrussells@gmail.com

Signature: Mark Russell Date: 2026-10-28

Mark Russell, Plaintiff pro se

514 Americas Way # 16606

Box Elder, SD 57719

Telephone: 605-603-9077

Email: business3510@protonmail.com

Signature: Jordan Kelley Date: 2026-10-28

Jordan Kelley, Plaintiff pro se

477 Vermont Street

San Francisco, CA 94107

Telephone: 702-957-1461

Email: jkelley12@gmail.com